**IOWA HEALTH SYSTEM; Trinity Health Systems, Inc.; and Trinity Regional Health System, Plaintiffs,**

v.

**TRINITY HEALTH CORPORATION, f/k/a Holy Cross Health System; Trinity Health–Michigan, f/k/a Mercy Health Services; Mercy Health Network; and Catholic Health Initiatives, Defendants.**

No. C 00–3078–MWB.

United States District Court, N.D. Iowa, Central Division.

Dec. 18, 2001.

MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANTS' MOTION TO DISMISS
PLAINTIFFS' COUNTERCLAIMS
TO DEFENDANT THC'S COUN-
TERCLAIM

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION .................................................. 901

A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 901
B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 903

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 904
A. Technical Insufficiencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 904
 1. The parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 904
 2. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 905
 3. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 907
B. Substantive Insufficiencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 909
 1. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 909
 2. Improper parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 910
 a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 910
 b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 911
 3. Failure to plead fraud with particularity . . . . . . . . . . . . . . . . 913
 a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 913
 b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 914
 i. Rule 9(b) requirements for pleading fraud . . . . . . . . . . . . 914
 ii. Pleading of "circumstances" of the fraud . . . . . . . . . . . 915
 iii. Pleading "on information and belief" . . . . . . . . . . . . . 915

 4. Failure to state a claim based on "improper tacking" . . . . . . . . . . 917
 a. "Redundancy" of the claim . . . . . . . . . . . . . . . . . . . . . . . . . 918
 b. "Abandonment" and "tacking" . . . . . . . . . . . . . . . . . . . . . 918
 i. "Abandonment" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 918
 ii. "Tacking" and "improper tacking" . . . . . . . . . . . . . . . . 920
 iii. "Improper tacking" as "abandonment" . . . . . . . . . . . . 921
 5. "Unclean hands" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 923
 a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 923
 b. The "unclean hands" cause of action . . . . . . . . . . . . . . . . 924
 c. Sufficiency of the allegations of "unclean hands" . . . . . . . . . 926
 i. Conduct contrary to assurances . . . . . . . . . . . . . . . . . . 926
 ii. Wrongful assertion of trademark rights . . . . . . . . . . . . 927
 6. Unfair competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 928
 a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 928
 b. Unfair competition under the Lanham Act and state law . . . . . . 929
 c. Sufficiency of the allegations to state a claim . . . . . . . . . . . . 932
 7. Declaratory judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 932

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 932

The motion to dismiss presently before the court puts the court in the rather unusual position of considering the sufficiency of claims asserted in the third round of the parties' pleadings. This is an action initiated by the plaintiffs to protect their common-law and state-registered trademarks, which are used in connection with their provision of health care services in Iowa and western Illinois. After this litigation was commenced, one of the defendants acquired the rights to a federally-registered trademark, and then asserted a counterclaim of infringement of that trademark. The counterclaim in the second round of pleadings prompted "counterclaims to the counterclaim" in the third round, as the original plaintiffs asserted various challenges to the defendant's federally-registered mark, conduct related to the acquisition of the federally-registered mark, and the assertion of rights pursuant to the newly-acquired mark. The original defendants now assert that the original plaintiffs' "counterclaims to counterclaim" fail to state claims upon which relief can be granted.

## I. INTRODUCTION

### A. Factual Background

This matter is before the court on a motion to dismiss certain claims, so that the factual background here is necessarily drawn from the parties' pleadings, and is intended only to put in context the motion presently pending before the court. The plaintiffs in this action identify themselves as Iowa Health System (IHS), an Iowa corporation with its principal place of business in this state; Trinity Health Systems, Inc. (THS), an Iowa corporation, also with its principal place of business in Iowa; and Trinity Regional Health System (TRHS), an Illinois corporation with its principal place of business in Illinois. The plaintiffs allege that they are affiliated to provide healthcare services and products in Iowa and western Illinois under common-law and state-registered trademarks "Trinity" and "Trinity Health." The plaintiffs will be referred to collectively herein as "the Trinity Iowa Plaintiffs."

In their responsive pleadings, the defendants identify themselves as the following: Trinity Health Corporation (THC), formerly Holy Cross Health System, an Indiana corporation with its principal place of business in Indiana; Trinity Health–Michigan (THM), formerly Mercy Health Services (MHS), a Michigan corporation with its principal place of business in Michigan; Mercy Health Network, Inc. (MHN), a Delaware non-stock corporation with two members, Catholic Health Initiatives and THM; and Catholic Health Initiatives (CHI), a Colorado corporation with its principal place of business in that state.[1] The defendants operate hospitals and provide other healthcare services in Michigan, Indiana, Ohio, Maryland, Iowa, Idaho, and California, and have recently acquired by assignment rights in a federally-registered service mark for "Trinity Healthcare Services," including a triangle-shaped logo. The defendants are described collectively herein as "the Trinity Michigan Defendants."

A dispute has arisen between the parties concerning the use of the term "Trinity" in connection with the provision of healthcare services, primarily in Iowa. In early 2000, the Trinity Iowa Plaintiffs, and more particularly IHS, learned that the Trinity Michigan Defendants allegedly intended to provide health services, in Iowa and elsewhere, under the name Trinity Health. Because use of the name Trinity Health by the Trinity Michigan Defendants might be confused with use of Trinity or Trinity Health by the Trinity Iowa Plaintiffs, IHS sent notice of its established common-law trademark rights in "Trinity" and "Trinity Health" to the Trinity Michigan Defendants. The parties then entered into negotiations concerning use of the terms "Trinity" and "Trinity Health."

In the course of those negotiations, on February 25, 2000, counsel for THM (still known as MHS at that time), wrote counsel for IHS a letter, which, in pertinent part, indicated the limited use that the Trinity Michigan Defendants intended to make of "Trinity Health":

---

1. In their original Answer, THC, THM, and MHN disputed the Trinity Iowa Plaintiffs' allegations that "Trinity Health Corporation is a merger or consolidation of Mercy Health Services and Holy Cross Health System," but admitted that Trinity Health Corporation was "formerly Holy Cross Health System," and denied that "Mercy Health Network, Inc., is a joint operating organization between CHI and Trinity Health Corp.," affirmatively alleging instead that MHN "is a Delaware nonstock corporation with two members: CHI and Trinity Health–Michigan." *See* Complaint, ¶¶ 8, 10 & 12, *and compare* Answer of THC, THM, and MHN, ¶¶ 8, 10 & 12. CHI admitted the pertinent paragraph of the Trinity Iowa Plaintiffs' Complaint concerning its corporate identity. *See* Complaint, ¶ 11, *and compare* Answer of CHI, ¶ 11.

MHS intends that the Trinity Health name will have a limited, corporate level use in Iowa. MHN was formed as a joint operating organization (incorporated in Delaware), sponsored by Catholic Health Initiatives and MHS. As a result of the Holy Cross affiliation, Trinity Health [*i.e.*, Trinity Health–Michigan or THM] would be substituted for MHS as a member of MHN. MHN then intends to use the TRINITY HEALTH name as part of a tag line for its corporate entity as follows: MERCY HEALTH NET-WORK, SPONSORED BY CATHOLIC HEALTH INITIATIVES AND TRINI-TY HEALTH. The TRINITY HEALTH name (along with the rest of the mark) will only appear at the corpo-rate level in the Iowa operations of MHN, on such things as the corporate stationery and signs at the West Des Moines corporate office.

Defendants' Memorandum In Support Of Their Motion To Dismiss Counterclaims, Exhibit 1, at 1.[2]

While negotiations were continuing, on June 14, 2000, IHS obtained Iowa state registrations for the marks "Trinity" and "Trinity Health." *See* Complaint, Exhibits 1 (state registration, pursuant to IOWA CODE CH. 548, of "mark described as . . . TRINITY" by IHS, indicating that "[t]he mark was first used in the state of Iowa on January 1, 1973") & 2 (state registration, pursuant to IOWA CODE CH. 548, of "mark described as . . . TRINITY HEALTH" by IHS, indicating that "[t]he mark was first used in the state of Iowa on January 1, 1973"). The Trinity Iowa Plaintiffs contend that these state registra-tions supplement their common-law trade-mark rights in Iowa.

Somewhat later, on March 5, 2001, after this litigation was initiated and after the Trinity Michigan Defendants had an-swered the Complaint, THC alleges that it obtained an assignment of rights to an incontestable federally-registered trade-mark for "Trinity Healthcare Services," including a triangular design, U.S. Regis-tration No. 1,783,669 (the '669 mark). The mark, as it appears in the registration, is the following:

THC's Amended Answer, Affirmative De-fenses, Counterclaim And Jury Demand, Exhibit 1. The registration indicates that the mark was registered on July 20, 1993, in the SERVICE MARK PRINCIPAL REGISTER by UHCS Management, Inc., a Tennessee Corporation, for "HEALTH CARE SERVICES, IN CLASS 42 (U.S.CL.100)," with a first use on May 12, 1991, and first use in commerce also on May 12, 1991. *Id.* The registration bears the following limitations:

NO CLAIM IS MADE TO THE EX-CLUSIVE RIGHT TO USE "HEALTHCARE SERVICES", APART FROM THE MARK AS SHOWN.

Iowa Plaintiffs' counterclaims in part rely upon this letter. The court will return to the question of whether or not it can consider this letter in ruling on the motion to dismiss be-low.

2. The Trinity Michigan Defendants contend that the court can consider this exhibit in resolving the motion to dismiss, even though it was not attached to the Complaint or any Answer or Counterclaim, because the Trinity

THE MARK CONSISTS OF THE WORD "TRINITY" IN COMBINATION WITH A TRIANGLE SHAPED LOGO INCLUDING A LEAF OR PETAL DESIGN THEREIN.

*Id.* A "TRADEMARK ASSIGNMENT," dated March 5, 2001, states that Trinity Healthcare Management Company, Inc., a Tennessee corporation, "the owner of the entire right, title and interest in and to" the '669 mark "assign[s] and transfer[s] to [THC] any and all right, title and interest in and to the Trademark Rights," described as follows:

U.S. Trademark Registration No. 1783669 for TRINITY HEALTHCARE SERVICES AND DESIGN dated JULY 20, 1993; and

Any and all rights and privileges provided under the trademark and other laws of the United States, the individual states thereof and jurisdictions foreign thereto with respect to the foregoing; the GOODWILL of the business symbolized by the mark; and any and all renewals thereof.

THC's Amended Answer, Affirmative Defenses, Counterclaim And Jury Demand, Exhibit 2, at 1.

THC now contends that the Trinity Iowa Plaintiffs are infringing the '669 mark and the Trinity Iowa Plaintiffs contend, *inter alia,* that the '669 mark should be cancelled.

### B. Procedural Background

Although negotiations concerning the use of "Trinity" and "Trinity Health" were continuing, the Trinity Iowa Plaintiffs contend that they filed the present lawsuit on September 28, 2000, to preserve their rights. Their Complaint asserts claims of unfair competition under § 43(a) of the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. § 1125(a); trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark infringement under IOWA CODE CH. 548; trademark

infringement under Iowa common law; and unfair competition under Iowa common law. The parties had an understanding that the Complaint would not be served immediately in light of their continuing negotiations. However, as the deadline for service of the Complaint approached, the Trinity Iowa Plaintiffs served the Complaint on the Trinity Michigan Defendants in late January of 2001. By agreement, the time for answers to the Complaint was extended a number of times. Eventually, on April 11, 2001, defendants THC, THM, and MHN filed their Answer and Affirmative Defenses, and defendant CHI filed a separate Answer and Affirmative Defenses.

On July 6, 2001, the court granted THC's motion for leave to file a separate Amended Answer, Affirmative Defenses, and Counterclaim. In its Counterclaim, THC alleges that, notwithstanding that IHS obtained state registration in Iowa for the marks "Trinity" and "Trinity Health" for healthcare services on June 23, 2000, as of July 20, 1993, the date of the federal registration of the '669 trademark, IHS had obtained common-law trademark rights in the "Trinity" and "Trinity Health" marks, if at all, only in the Fort Dodge, Iowa, area. However, THC alleges that, since registration of the '669 trademark, IHS has used the "Trinity" and "Trinity Health" marks in commerce both within and outside of the Fort Dodge, Iowa, area. THC therefore asserts a counterclaim of infringement of the federally-registered '669 mark by IHS.

On July 27, 2001, the Trinity Iowa Plaintiffs jointly filed a Reply And Counterclaims to THC's Counterclaim. In their first counterclaim, the Trinity Iowa Plaintiffs seek cancellation of the '669 mark under 15 U.S.C. § 1064 on the ground that the assignment of the mark to THC resulted in an abandonment of the registration

and/or the '669 mark. In their second counterclaim, they seek cancellation of the '669 mark under 15 U.S.C. § 1064 on the ground that the original registration was fraudulently procured. In their third counterclaim, also under 15 U.S.C. § 1064, the Trinity Iowa Plaintiffs seek cancellation of the '669 mark for "improper tacking." In their fourth counterclaim, they allege "unclean hands" on the part of THC in its procurement of the federal registration of the '669 mark. In their fifth counterclaim, they allege unfair competition in violation of the Lanham Act and state common law. Finally, in their sixth counterclaim, the Trinity Iowa Plaintiffs seek a declaratory judgment concerning the respective rights of the parties to use marks including the terms "Trinity" and/or "Trinity Health" within the Trinity Iowa Plaintiffs' trade area.

In lieu of a reply to the Counterclaims to THC's Counterclaim, on August 20, 2001, the Trinity Michigan Defendants moved to dismiss those Counterclaims. The Trinity Iowa Plaintiffs' resisted the motion to dismiss on September 7, 2001, and the Trinity Michigan Defendants filed a reply on September 18, 2001. Neither the plaintiffs nor the defendants requested oral arguments on the motion to dismiss. Therefore, the Trinity Michigan Defendants' motion to dismiss is now fully submitted.[3]

## II. LEGAL ANALYSIS

### A. Technical Insufficiencies

#### 1. The parties' arguments

The Trinity Michigan Defendants first urge the court to dismiss the Trinity Iowa Plaintiffs' Counterclaims to THC's Counterclaim on the ground that the Counterclaims do not comply with Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure. Specifically, they contend that the Trinity Iowa Plaintiffs' incorporation into their Counterclaims of prior paragraphs of their pleadings, including affirmative defenses, denials, and admissions, makes it difficult or impossible to frame a reply that addresses each paragraph fully. They rely on *Porto Transport, Inc. v. Consolidated Diesel Elec. Corp.*, 19 F.R.D. 256, 257–58 (S.D.N.Y.1956), as authority for the technical insufficiency of the Counterclaims to THC's Counterclaim.

The Trinity Iowa Plaintiffs, however, contend that *Porto Transport* does not stand for the proposition that their Counterclaims should be stricken in their entirety. Rather, they contend that incorporation by reference is commonly used to reduce the complexity of pleadings and that the incorporated paragraphs here were drawn either from the Trinity Iowa Plaintiffs' original Complaint or their Counterclaim to THC's Counterclaim, and that the Trinity Michigan Defendants had no trouble responding individually to the paragraphs now incorporated by reference. Thus, the Trinity Iowa Plaintiffs contend that the Trinity Michigan Defendants can respond to paragraphs that incorporate prior paragraphs by reference, in their turn, by incorporating by reference their prior responses to the incorporated paragraphs. Moreover, they point out that the Trinity Michigan Defendants do not contend that they somehow had inadequate notice of the cause of action asserted in each counterclaim.

In reply, the Trinity Michigan Defendants argue that, while incorporation by reference of prior allegations may be com-

---

**3.** The Trinity Iowa Plaintiffs were represented by Edmund J. Sease, and Mark D. Hansing of Zarley, McKee, Thomte, Voorhees & Sease in Des Moines, Iowa. The Trinity Michigan Defendants were represented by James D. Dasso and Marianne C. Holzhall of Foley & Lardner in Chicago, Illinois, and Patrick L. Sealey of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., in Sioux City, Iowa.

mon practice, the incorporation by reference here goes far beyond incorporation of prior factual allegations, resulting in pleadings to which the Trinity Michigan Defendants cannot reasonably respond. They also point out that, contrary to the Trinity Iowa Plaintiffs' contentions, they have *not yet* responded to any of the incorporated paragraphs, because all are incorporated from the Answer and Counterclaims to THC's Counterclaim, to which the Trinity Michigan Defendants have first asserted their motion to dismiss, not from the original Complaint.

### 2. *Applicable standards*

■ A claim or counterclaim must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir.1990). Nor should a claim "appea[r] to be a legal bouillabaisse with bits of [several different claims] . . . all stirred and served as one count." *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1051–52 (7th Cir.1979) (commenting on a party's non-compliance with Rule 8(a) and (e)). Consequently, Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure establish certain requirements for pleadings.

First, Rule 8(e) provides as follows:

**(e) Pleading to be Concise and Direct; Consistency.**

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be subject to the obligations set forth in Rule 11.

FED. R. CIV. P. 8(e). Next, Rule 10(b) provides as follows:

**(b) Paragraphs; Separate Statements.** All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

FED. R. CIV. P. 10(b). Thus, Rule 8(e)(1) requires simplicity and clarity, generally, while Rules 8(e)(2) and 10(b) explain the requirements for pleading alternative theories and separate claims. Specifically, "Federal Rule of Civil Procedure 8(e)(2) allows a party to set forth two or more statements of a claim in one count; however, Rule 10(b) requires pleading separate counts for each distinctive statutory and constitutional claim." *Harris v. River View Ford, Inc.*, 2001 WL 1191188, *1 (N.D.Ill. Oct. 4, 2001); *Demes v. ABN Amro Servs. Co., Inc.*, 2001 WL 563813, *2 (N.D.Ill. May 23, 2001) ("Rule 10(b) requires that . . . each claim founded upon a separate transaction or occurrence be stated in separate counts. The rule has been interpreted to require separate counts for

each distinctive statutory and constitutional claim.") (citations omitted).

■ Some time ago, the Eighth Circuit Court of Appeals stated that a complaint, and presumably a counterclaim, can be dismissed pursuant to Rule 8(e)(1) if it is " 'confusing, ambiguous, redundant, vague' and a completely unintelligible statement of argumentative fact." *Koll v. Wayzata State Bank*, 397 F.2d 124, 125 (8th Cir. 1968) (quoting *Wallach v. City of Pagedale, Mo.*, 359 F.2d 57 (8th Cir.1966), and *Wallach v. City of Pagedale*, 376 F.2d 671 (8th Cir.1967)). However, the Eighth Circuit Court of Appeals has since stated that "[a] complaint which fails to comply with Rule 8 may be dismissed with prejudice pursuant to Fed.R.Civ.P. 41(b) *after* allowing time to file an amended complaint," because " '[d]ismissal is ... a drastic sanction which should be sparingly exercised and is reviewable for abuse of discretion.' " *Mangan v. Weinberger*, 848 F.2d 909, 911 (8th Cir.1988) (emphasis added) (quoting *Welsh v. Automatic Poultry Feeder Co.*, 439 F.2d 95, 96 (8th Cir.1971)), *cert. denied*, 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989); *see also Azar v. Conley*, 456 F.2d 1382, 1391 (6th Cir.1972) (suggesting that a dismissal is not appropriate unless there is a "gross violation" of Rule 8(e) such that the responding party "could not reasonably be expected to answer the complaint as it stands"). This court reads *Mangan* as suggesting that, if a pleading fails Rule 8(e), it should not be dismissed in the first instance; rather, the pleader should be given the opportunity to file an amended pleading complying with Rule 8(e), and only if the pleader fails to do so, or the amended pleading suffers from similar insufficiencies, is it appropriate to dismiss the pleading. Similarly, "courts have generally required plaintiffs to replead rather than dismiss counts based on [a Rule 10(b)] 'violation.' " *See Demes v. ABN Amro Servs. Co., Inc.*, 2001 WL 563813, *2 (N.D.Ill. May 23, 2001)

(citing cases from the Northern District of Illinois so holding).

The Trinity Michigan Defendants challenge the pleadings here specifically on the basis of the incorporation by reference of prior paragraphs, including affirmative defenses, to such an extent that they cannot reasonably be expected to respond. Excessive incorporation by reference from one count to another can lead to the introduction into the pleadings "of considerable unnecessary matter." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277, 285 (E.D.Wis.1975). However, the ultimate question under Rules 8(e) and 10(b) would seem to be whether "the theory and basis of the [various] counts are easily distinguishable." *Id.* Incorporation by reference of affirmative defenses can be problematic, as suggested in the *Porto Transport* case upon which the Trinity Michigan Defendants specifically rely:

> The answer sets up numerous affirmative defenses and each successive defense incorporates by reference all preceding defenses. Thus, the ninth affirmative defense contains thirteen separate defenses, one counter-claim and one cross-claim. Although defendant may feel that the incorporation of all prior defenses in each defense is conducive to continuity, it places plaintiff in the position of having to reply to a counterclaim which also incorporates seven affirmative defenses. The Federal Rules only require replies to counterclaims and not to affirmative defenses. Nevertheless, a responsive pleading to the counterclaim would also entail a replication to the seven affirmative defenses.

*Porto Transport v. Consolidated Diesel Elec. Corp.*, 19 F.R.D. 256, 257–58 (S.D.N.Y.1956). However, as the Trinity Iowa Plaintiffs point out, the court in *Porto Transport* did not dismiss or strike the

counterclaims on the basis of this "violation" of Rules 8(e) and 10(b); rather, the court concluded that, "[u]nder the circumstances, the defendant should serve an amended answer separately stating and numbering its defenses." *Id.* at 258.

### 3. *Analysis*

■ The court cannot say that the Trinity Iowa Plaintiffs' Counterclaims to THC's Counterclaim are so " 'confusing, ambiguous, redundant, vague,' " or such "a completely unintelligible statement of argumentative fact" that dismissal of the Counterclaims in their entirety is appropriate. *Koll,* 397 F.2d at 124 (quoting *Wallach,* 359 F.2d at 57); *see also Azar,* 456 F.2d at 1391 (permitting dismissal only for a "gross violation" of Rule 8(e)). Indeed—ignoring incorporated material, for the moment—each counterclaim, with the exception of the Fifth Cause of Action, states quite clearly a separate, specific claim for relief in numbered paragraphs stating "a single set of circumstances." *See* FED. R. CIV. P. 10(b). Thus, "the theory and basis of the [various] counts are easily distinguishable," *Van Dyke Ford, Inc.,* 399 F.Supp. at 285, at least when paragraphs incorporated by reference are ignored.

It is true that little confusion is likely to arise, for example, from the Trinity Iowa Plaintiffs' incorporation by reference into their reply to the Counterclaim of their replies to the fourteen paragraphs of THC's general allegations, *see* Reply to Counterclaim, ¶¶ 1–14, their incorporation by reference of paragraphs 1–16 of their reply in paragraph 3 of their own Counterclaims, *see* Counterclaims, ¶ 3, or even incorporation by reference of paragraphs 1–26 of the Counterclaims, all factual allegations, in paragraph 27, the first paragraph of the "First Cause of Action" in the Counterclaims. *See* Counterclaims, ¶ 27. This is so, because the paragraphs incorporated by reference are essentially factual allega-

tions demonstrating clearly and concisely the basis for the Trinity Iowa Plaintiffs' reply and Counterclaims. In other words, these incorporations by reference do serve as a "shorthand" way of reiterating pertinent factual allegations.

However, the defendants are correct that indiscriminate incorporation by reference of other preceding paragraphs, including affirmative defenses and preceding counterclaims, gives the Counterclaims something of the "appear[ance of] a legal bouillabaisse," *U.S. General, Inc.,* 598 F.2d at 1051–52, making it necessary for the "court and an opposing party to forever sift through its pages in search" of the Trinity Iowa Plaintiffs' Counterclaims. *Jennings,* 910 F.2d at 1436. Far more confusing than the examples given just above is the wholesale incorporation by reference into each of the first five Counterclaims of all of the affirmative defenses and all of the preceding claims. *See* Counterclaims, ¶¶ 27, 33, 47, 51, and 62. The comparative clarity of the first five Counterclaims, when incorporated paragraphs are ignored, dissipates when the scope of the incorporated allegations, defenses, and counterclaims is recognized, as the precise factual basis and legal theories for individual counterclaims become blurred almost beyond recognition. *See Porto Transport,* 19 F.R.D. at 257–58. "[A] responsive pleading to [each] counterclaim would also entail a replication to the [eight] affirmative defenses" and each of the preceding counterclaims. *Cf. id.* In short, these excessive incorporations by reference have led to the introduction into the pleadings "of considerable unnecessary matter." *Van Dyke Ford, Inc.,* 399 F.Supp. at 285. On the other hand, there might be some justification for reiteration of all prior allegations, affirmative defenses, and counterclaims into a counterclaim for declaratory judgment, as in the Trinity Iowa Plaintiffs'

Sixth Cause of Action in their Counterclaims.

The remedy for excessive incorporation by reference, however, as the Trinity Iowa Plaintiffs contend, is not the dismissal of their Counterclaims in their entirety. Rather, they "should serve an amended [reply and counterclaims] separately stating and numbering [their] defenses," *Porto Transport*, 19 F.R.D. at 258, and leaving out of their individual counterclaims incorporations by reference that *are not* simply incorporations by reference of factual allegations that lend further support to the individual counterclaim at issue. *See Mangan*, 848 F.2d at 911 (permitting dismissal with prejudice pursuant to Rule 41(b) only after the pleader fails to comply with an order to amend to comply with Rule 8); *Demes*, 2001 WL 563813 at *2 (N.D.Ill. May 23, 2001) (pursuing the same course with Rule 10(b) insufficiencies). The Trinity Michigan Defendants' motion to dismiss pursuant to Rules 8(e) and 10(b) will therefore be granted to this limited extent: Should the Trinity Iowa Plaintiffs' Counterclaims otherwise survive the present motion to dismiss, the Trinity Iowa Plaintiffs will be given time to amend their Counterclaims accordingly and the Trinity Michigan Defendants will be given a reasonable period of time to frame a responsive pleading to the amended Counterclaims.

Although the Trinity Michigan Defendants' contentions regarding the insufficiency of the Counterclaims under Rules 8(e) and 10(b) focused primarily on excessive incorporations by reference, the Trinity Michigan Defendants also contend elsewhere in their brief that if the Trinity Iowa Plaintiffs' Third Counterclaim, alleging "improper tacking" is, as the plaintiffs contend, another assertion that the '669 mark has been "abandoned," then that Counterclaim is just an alternative theory for their First Counterclaim, expressly alleging "abandonment," one of the statutory grounds for cancellation of a trademark under 15 U.S.C. § 1064, and should have been stated in the First Counterclaim. The court concludes, however, that the pleading of Counterclaims One and Three as separate counts does not constitute a "technical" violation of Rule 10(b). Although the two counterclaims may have essentially the same "statutory" basis, § 1064(3), they appear to be based upon separate kinds of conduct allegedly resulting in "abandonment," and thus appear to be based upon "distinctive" theories and "separate transactions or occurrences." *Cf. Harris*, 2001 WL 1191188 at *1 ("Rule 10(b) requires pleading separate counts for each distinctive statutory and constitutional claim."); *Demes*, 2001 WL 563813 at *2 ("Rule 10(b) requires that ... each claim founded upon a separate transaction or occurrence be stated in separate counts. The rule has been interpreted to require separate counts for each distinctive statutory and constitutional claim.") (citations omitted). In short, the court cannot conclude, based on the precise "abandonment" counterclaims alleged, that it was a "technical" violation of Rule 10(b) for the Trinity Iowa Plaintiffs to give notice of their separate "abandonment" theories in separate counterclaims.

■ Although not challenged by the Trinity Michigan Defendants, the court notes, *sua sponte*, that the Trinity Iowa Plaintiffs' Fifth Cause of Action in their Counterclaims does state distinctive statutory and common-law "unfair competition" theories, one under the Lanham Act and one under Iowa common law. Consequently, pursuant to Rules 8(e) and 10(b), these distinctive theories of "unfair competition" should have been stated in separate counts. *Cf. Harris*, 2001 WL 1191188 at *1 ("Rule 10(b) requires pleading separate

counts for each distinctive statutory and constitutional claim."); *Demes*, 2001 WL 563813 at \*2 ("Rule 10(b) requires that ... each claim founded upon a separate transaction or occurrence be stated in separate counts. The rule has been interpreted to require separate counts for each distinctive statutory and constitutional claim.") (citations omitted). Should these counterclaims otherwise survive the motion to dismiss, the court will grant the Trinity Iowa Plaintiffs leave to amend their Reply and Counterclaims to assert these distinctive causes of action in separate counts.

## B. Substantive Insufficiencies

### 1. Applicable standards

In addition to their "technical" challenges, the Trinity Michigan Defendants also assert that each of the Trinity Iowa Plaintiffs' Counterclaims fails to state a claim upon which relief can be granted, at least as to some or all of the defendants. The issue on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999) ("We

take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir.1996) (same).

■ The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir.1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be

granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

 The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley*, 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted, as a practical matter, only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

Applying these standards, the court will consider in turn the Trinity Michigan Defendants' various assertions that the Trinity Iowa Plaintiffs' Counterclaims to THC's Counterclaim fail to state claims upon which relief can be granted.

### 2. *Improper parties*

#### a. *Arguments of the parties*

The Trinity Michigan Defendants assert that the Trinity Iowa Plaintiffs' "cancellation" counterclaims—Counterclaims One, Two, and Three alleging abandonment, fraudulent procurement, and "improper tacking," respectively—must be dismissed as to THM, MHN, and CHI, because only the owner of a trademark, in this case, THC, is a proper defendant to a suit for cancellation of the trademark.[4] THC contends further that not even an exclusive licensee of a trademark can stand in the owner's shoes with respect to such attacks on a trademark. THC contends that it alone owns the '669 mark and that the Trinity Iowa Plaintiffs have not alleged that rights in the '669 mark have been assigned to, or even exclusively licensed to, any other defendant.

---

**4.** While the Trinity Michigan Defendants make other challenges to the Trinity Iowa Plaintiffs' Second and Third Counterclaims, they make no other challenge to the First Counterclaim. Thus, the Trinity Michigan Defendants apparently concede that the First Counterclaim states a claim upon which relief can be granted against THC.

The Trinity Iowa Plaintiffs acknowledge that THC has *alleged* that it is the owner of the '669 mark by assignment from the original owner. However, they contend that it is their own allegations, not THC's, that must be taken as true under Rule 12(b)(6), in the context of the present motion to dismiss, and that they have alleged that THC "or Defendants" are the owners of or have rights in the '669 mark and registration. The Trinity Iowa Plaintiffs contend that they have not yet completed discovery into the matter of ownership of the '669 mark and registration. Thus, they assert that their allegations support causes of action for "cancellation" against all of the Trinity Michigan Defendants, and for the court to hold otherwise, it would have to engage in fact-finding concerning ownership of the '669 mark that cannot properly be made pursuant to a Rule 12(b)(6) motion.

In reply, the Trinity Michigan Defendants contend that there is no reasonable factual basis for the Trinity Iowa Plaintiffs' allegation that any defendant other than THC owns the '669 mark, when an assignment of that mark to THC alone is attached to THC's Counterclaim. The Trinity Michigan Defendants contend that there must be some factual basis for asserting a claim against a particular defendant *before* suit is filed.

### b. Analysis

■ The Trinity Michigan Defendants rely on *Informix Software, Inc. v. Oracle Corp.,* 927 F.Supp. 1283 (N.D.Cal.1996), in support of their contention that only the owner of a trademark, and not any licensee, is the proper defendant in an action to cancel a trademark. In *Informix Software,* the district court observed that "[t]he issue of who can be sued for trademark cancellation in federal court appears to be an issue of first impression," *see Informix Software,* 927 F.Supp. at 1285, and it does not appear that any court has since considered

the question. In *Informix Software,* the court concluded that neither 15 U.S.C. § 1119, which provides for concurrent jurisdiction of the federal courts and the Trademark Trial and Appeal Board over cancellation of trademarks, nor 15 U.S.C. § 1064, which identifies the grounds for, and identifies the party who can *bring,* an action for cancellation of a trademark, "expressly delineate[s] the parties who may be sued for trademark cancellation." *Informix Software,* 927 F.Supp. at 1286. However, the court reasoned that, because § 1119 "provides that the Court may rectify the trademark register with respect to 'the registrations of any party to the action,'" that section "suggests that a complaint for trademark cancellation should proceed against the party who currently owns the trademark." *Id.* (quoting 15 U.S.C. § 1119). The court reasoned further that, even though an exclusive licensee may otherwise be able to "stand in the shoes" of a trademark owner, because a licensor still has the duty to control its licensee's use of the mark, that duty "also strongly suggests that the ultimate responsibility for the validity of a trademark lies with the licensor, not with the licensee." *Id.* The court therefore concluded that an exclusive licensee is not a proper defendant in a suit for cancellation of a trademark; rather, "the owner of the trademark is the only proper defendant." *Id.* While the Trinity Iowa Plaintiffs do not disagree with the decision in *Informix Software* or cite any contrary authority, they do assert that the question of ownership of the '669 trademark cannot be settled on a motion to dismiss, where they have alleged that THC "or Defendants" may be the owner of the mark.

The court believes that the Trinity Michigan Defendants' challenge to assertion of the first of the Counterclaims to THC's Counterclaim against any defendant other than THC may be readily resolved at the

summary judgment stage of the proceedings. At that point, the Trinity Michigan Defendants will have the opportunity to submit evidence demonstrating beyond dispute that THC alone is the owner of the '669 mark, and thus the only proper party to a claim for cancellation of the mark, *see, e.g., Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (the party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue"), and the Trinity Iowa Plaintiffs will be put to the burden of generating a genuine issue of material fact, if they can, that any party other than THC is the owner of the mark, and hence a proper defendant on their "cancellation" claims. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, at this point in the proceedings, the court must assume that all facts alleged in the Trinity Iowa Plaintiffs' Counterclaims are true, because those are the pleadings challenged here pursuant to Rule 12(b)(6), and the court must liberally construe those allegations, *see Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, dismissing " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Handeen,* 112 F.3d at 1347 (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229). The court finds that the allegation of ownership of the mark by each of the defendants is an allegation of fact, not a "conclusory allegatio[n] of law" or an "unwarranted inferenc[e]" here, *Silver,* 105 F.3d at 397, where the allegations of both sides indicate that the defendants

intend to make use of the mark in question for joint activities. The "cancellation" counterclaims against defendants other than THC cannot be dismissed against the standard applicable to a motion to dismiss, because proof that the other defendants are "owners" of the '669 mark would be "a set of facts that could be proved consistent with the allegations." *Id.*

Nor does THC's attachment to its Counterclaim of the document assigning the ownership of the '669 mark exclusively to THC necessarily establish that the Trinity Iowa Plaintiffs *cannot* prove "a set of facts ... consistent with the allegations" that the other defendants may own the '669 mark, even assuming the document can properly be considered on a motion to dismiss. The assignment does not establish beyond dispute that, at any time after its date of execution, March 5, 2001, THC did not assign or convey the ownership of the '669 mark to another defendant.

Although leaving the question of ownership of the '669 mark for summary judgment may seem like elevating form over substance, particularly where the defendants concede that the "cancellation" claims can be stated against one of them, but only one of them, such a procedure acknowledges precisely the distinction in the Federal Rules of Civil Procedure between accepting allegations in challenged pleadings as true, pursuant to Rule 12(b)(6), to determine whether or not the pleader has a cognizable claim, *see, e.g., Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (the issue on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of its claims); *Aceto Agric. Chem. Corp.,* 872 F.2d at 1376 (same), on the one hand, and examination of record evidence, pursuant to Rule 56, to determine whether or not there is a genu-

ine issue of material fact for trial, *see, e.g., Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996) (the trial judge's function on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990) (same), on the other. This portion of the Trinity Michigan Defendants' motion to dismiss counterclaims will be denied under the standards applicable to a Rule 12(b)(6) motion.

### 3. *Failure to plead fraud with particularity*

#### a. *Arguments of the parties*

The Trinity Michigan Defendants next challenge the Trinity Iowa Plaintiffs' second counterclaim on the ground that the counterclaim fails to plead fraudulent procurement of the '669 mark by the original owner with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. The counterclaim in question asserts that, on the plaintiffs' information and belief, the original owner of the '669 mark, Trinity Healthcare Management, Inc., a Tennessee corporation not currently a party to this litigation, was aware that third parties had superior rights to the mark, but failed to disclose that fact to the Patent and Trademark Office (PTO), and that the applicant knew that its listing of the services it intended to provide under the mark as "healthcare services" was overbroad and misleading.

The Trinity Michigan Defendants contend that the allegations of fraud are merely conclusory, without description of the circumstances of the fraud, including time, place, and contents of the false representations, the identity of the person making the misrepresentations, and what was obtained as a result of the misrepresentations. More specifically, the Trinity

Michigan Defendants contend that there is no identification of the purported "third parties" with superior rights that the applicant failed to disclose, nor any explanation of the manner in which the description of services as "healthcare services" was overbroad or misleading. Furthermore, the Trinity Michigan Defendants contend that nearly all of the allegations are "on information and belief," but no basis for such belief is set forth, nor any basis for an assumption that THC, and only THC, knows the details of any misrepresentations to the PTO, where the alleged fraud was committed by the prior owner of the '669 mark, which is not a party to this litigation.

In response, the Trinity Iowa Plaintiffs parse their pleadings to demonstrate the way in which they have pleaded the "circumstances" of the alleged fraud. They also contend that they have been forced to make some allegations on information and belief, because only the defendants or the assignor of the '669 mark have specific knowledge of the fraudulent events pleaded. They also assert that they have alleged that the applicant for the '669 mark, the Tennessee corporation, was aware of at least one third party having superior rights to use the registered mark, and that this allegation must be taken as true under the standards applicable to a motion pursuant to Rules 12(b)(6) and 9(b). As to the challenge to their allegations that the designation of services was knowingly overbroad and misleading, the Trinity Iowa Plaintiffs contend that they have adequately pleaded that the applicant overstated the scope of services with which the mark was to be used, and thus committed fraud on the PTO.

In reply, the Trinity Michigan Defendants reiterate that the Trinity Iowa Plaintiffs have failed to disclose the sources of their "information and belief" for their

fraud allegations, and thus cannot rely on such allegations.

### b. Analysis

***i. Rule 9(b) requirements for pleading fraud.*** This court has articulated the standards for pleading fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure in several decisions. *See Wright v. Brooke Group, Ltd.*, 114 F.Supp.2d 797, 832–33 (N.D.Iowa 2000); *Doe v. Hartz*, 52 F.Supp.2d 1027, 1055 (N.D.Iowa 1999) (elements and pleading); *Brown v. North Cent. F.S., Inc.*, 987 F.Supp. 1150, 1155–57 (N.D.Iowa 1997) (pleading); *Brown v. North Cent.*, 173 F.R.D. 658, 664–65 (N.D.Iowa 1997) (pleading); *North Cent. F.S., Inc. v. Brown*, 951 F.Supp. 1383, 1407–08 (N.D.Iowa 1996) (pleading); *DeWit v. Firstar Corp.*, 879 F.Supp. 947, 970 (N.D.Iowa 1995) (elements and pleading). In *Wright*, this court provided the following brief discussion of these matters, which the court finds is all that is required here:

> Rule 9(b) of the Federal Rules of Civil Procedure " 'requires a plaintiff to allege with particularity the facts constituting the fraud.' " *See Brown*, 987 F.Supp. at 1155 (quoting *Independent Business Forms v. A–M Graphics*, 127 F.3d 698, 703 n. 2 (8th Cir.1997)). " 'When pleading fraud, a plaintiff cannot simply make conclusory allegations.' " *Id.* (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir.1997)). In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir.1995), the Eighth Circuit Court of Appeals explained:
>
> > Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " 'Circumstances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepre-

sentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir.1985), conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *In re Flight Transp. Corp. Sec. Litig.*, 593 F.Supp. 612, 620 (D.Minn.1984).

> *Commercial Property*, 61 F.3d at 644; *see Roberts*, 128 F.3d at 651 (noting that factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b) "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud.").

*Wright*, 114 F.Supp.2d at 832–33. Although the Eighth Circuit Court of Appeals has not specifically applied these requirements to pleading fraudulent procurement of a trademark, other courts have. *See, e.g., San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 472 (10th Cir.1988) (finding that the district court appeared to have "overlooked or ignored" Rule 9(b) in its consideration of a claim of fraud in the procurement of a trademark registration, but "fraud in the procurement must be alleged with specificity as required by Rule 9(b), both in federal court and in PTO administrative proceedings"); *Gaffrig Perf. Indus., Inc. v. Livorsi Marine, Inc.*, 2001 WL 709483, *4 (N.D.Ill. June 25, 2001) (applying the specificity require-

ments of Rule 9(b) to a claim of fraudulent procurement of a federal trademark registration); *see also GMA Accessories, Inc. v. Idea Nuova, Inc.,* 157 F.Supp.2d 234, 242 (S.D.N.Y.2000) (fraudulent trademark registration pursuant to § 38 of the Lanham Act, 15 U.S.C. § 1120, "like any fraud claim, must comply with the heightened pleading standards of Fed.R.Civ.P. 9(b)").

*ii. Pleading of "circumstances" of the fraud.* The court finds that the Trinity Iowa Plaintiffs have alleged the "circumstances" of the fraud: They have alleged the time as on or about April 15, 1991, *see* Counterclaim II, ¶ 35; the place as the application for what became the '669 mark, *see id.* at ¶ 35; the content of false representations as declarations that the mark was for "health care services" and that no third party had superior rights in the mark, but that the applicant for the mark was aware of one or more third parties having superior rights to use a similar or identical mark, and that the listing of "health care services" was overbroad and misleading, *see id.* at ¶¶ 35–37; the identity of the person making the misrepresentation as THC's predecessor in interest, and more specifically, the president of that entity, *see id.* at ¶ 35; and what was obtained thereby as the registration of the '669 mark, *see id.* at ¶ 42. *See Wright,* 114 F.Supp.2d at 832 (identifying these as the "circumstances" of the fraud, quoting *Commercial Property,* 61 F.3d at 644). However, the Trinity Michigan Defendants challenge the fraud allegations on the further ground that they are entirely conclusory or are made only on "information and belief," without any identification of any factual basis therefor. This contention requires further consideration.

*iii. Pleading "on information and belief."* As the Eighth Circuit Court of Appeals very recently explained,

Our ... case of *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549 (8th Cir.1997), interpreted the particularity requirement of Rule 9(b) to entail pleading of "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). *There, we quoted First Circuit authority that an allegation based on information and belief should set forth the source of the information. Id.* (quoting *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991)). *This rule was developed as a corollary to the rule that allegations of fraud regarding matters peculiarly within the opposing party's knowledge could be based on information and belief, so long as accompanied by a statement of the facts on which the belief was founded. See Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); Harold S. Bloomenthal & Samuel Wolff, *Securities and Federal Corporate Law* § 16:12 n. 9, 16:25.6 n. 2 (1998). One treatise refers to the rule permitting information and belief pleading as "provid[ing] a road map around Rule 9(b) by asserting allegations based on speculation as to the underlying facts." Bloomenthal & Wolff § 16:25.6. The treatise continues that this loophole was aggravated by the provision of Fed.R.Civ.P. 11(b) "under which counsel can attempt to avoid the sanction bullet by certifying that the allegations 'are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'" Bloomenthal & Wolff § 16:25.6. Since a primary goal of the [Private Securities Litigation] Reform Act [of 1995, P.L. No. 104–67, 109 Stat. 737] was to prevent baseless strike suits, S. Rpt. No. 104–98 at 4, reprinted in 1995 U.S.C.C.A.N. at 683, *our practice under Rule 9(b) of requiring disclosure of facts relied on for pleadings based on*

*information and belief should obviously be continued under the Reform Act.*

*Florida State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 668 (8th Cir. 2001) (emphasis added). Thus, pursuant to *Florida State Board of Administration,* a party may plead the circumstances of fraud "upon information and belief," *if* the allegations are "regarding matters peculiarly within the opposing party's knowledge," and *if* the allegations of fraud are "accompanied by a statement of the facts on which the belief was founded." *Id.*

The Trinity Michigan Defendants are correct that the Trinity Iowa Plaintiffs' allegations of fraud—in particular the allegations of the circumstances of fraud concerning the falsity of the allegedly fraudulent statements and the applicant's knowledge of falsity—are entirely "on information and belief." Specifically, the Trinity Iowa Plaintiffs alleged the following in support of their counterclaim of "fraudulent procurement":

36. *On information and belief,* at the time of the making of the above-referenced oath, *the applicant was aware of one or more third parties having superior rights to use a mark(s)* either in the identical form of the mark of U.S. Registration No. 1,783,669 or in such near resemblance thereto as to be likely, when used on or in connection with the goods/service of such other person, to cause confusion, or to cause mistake, or to deceive.

37. *On information and belief,* at the time of making the above-referenced oath or declaration, *the applicant was aware that the listing of the services it intended to provide under the mark as "healthcare services" was overbroad and misleading.*

\* \* \* \* \* \*

 40. *On information and belief,* applicant deliberately failed to provide the withheld or misstated material to the USPTO with the intent to induce the USPTO to approve the application for registration.

41. *On information and belief,* the USPTO reasonably relied on applicant's misrepresentation and omissions of fact in approving the application for registration that matured into U.S. Registration No. 1,783,-669.

42. *On information and belief,* Registration No. 1,783,669 was obtained fraudulently because of knowledge by the applicant of prior uses of confusingly similar marks in the United States which were not disclosed to the USPTO in the application for registration, and that the registration would not have been granted in its present form or at all if such material information had been before the USPTO.

Counterclaims to THC's Counterclaim, Count II at ¶¶ 36–37, 40–42 (emphasis added). To be entitled to plead "on information and belief," the Eighth Circuit Court of Appeals requires that the allegations be "regarding matters peculiarly within the opposing party's knowledge," *and* that the allegations of fraud be "accompanied by a statement of the facts on which the belief was founded." *Florida State Bd. of Admin.,* 270 F.3d at 668. While the Trinity Iowa Plaintiffs may or may not satisfy the first of these requirements, they certainly have *not* satisfied the second, because their Counterclaims are void of any "statement of the facts on which the belief [in the falsity of the alleged misrepresentations] was founded." *Id.* Nowhere do the Trinity Iowa Plaintiffs plead a factual basis for an assertion that there were, or that the applicant for the '669 mark was

"aware" that there were, "one or more third parties having superior rights to use a mark(s)" confusingly similar to what became the '669 mark. *See* Counterclaim II, ¶ 36. As the defendants point out, nowhere do the Trinity Iowa Plaintiffs identify any such third party. Similarly, nowhere do the Trinity Iowa Plaintiffs plead a factual basis for an assertion that the declaration of intent to use the mark for "health care services" was overbroad and misleading, or that the applicant was "aware" that it was. *See id.* at ¶ 37. Indeed, in their own Complaint, the Trinity Iowa Plaintiffs allege with no greater specificity that IHS "is a well known *health care services* corporation, and its affiliates, including THS and TRHS, provide among other products and services, *health care services* of high quality and widely-known reputation," and that its own common-law and state-registered "Trinity" and "Trinity Health" marks are "trademarks and trade names to identify *health care services,* and as marks to distinguish Plaintiffs' services from *health care services* of others." Complaint, ¶ 14 (emphasis added).

Thus, while the Trinity Iowa Plaintiffs' allegations of fraud state the "who, what, where, when, and what was obtained" circumstances of the alleged fraud, as required under Rule 9(b), the allegations of fraud still do not satisfy the requirements of Rule 9(b), because the allegations based "on information and belief" are not "accompanied by a statement of the facts on which the belief was founded." *Florida State Bd. of Admin.,* 270 F.3d at 668. That part of the Trinity Michigan Defendants' motion to dismiss the Trinity Iowa Plaintiffs' Second Counterclaim, which alleges fraudulent procurement of the registration of the '669 mark, will be granted for failure to plead fraud with the particularity required by Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to the extent that the plaintiffs must amend their pleading of fraud, if they can, to

satisfy the requirements of Rule 9(b) and 12(b)(6). *See Wright,* 114 F.Supp.2d at 835 (permitting amendment to comply with Rule 9(b), where the plaintiffs had not yet amended a fraud complaint originally filed in state court and consequently not subject to Rule 9(b) requirements); *North Central F. S., Inc.,* 951 F.Supp. at 1409 & 1412–13 (permitting a party to amend pleadings to attempt to allege fraud with the particularity required by Rule 9(b), although such leave is not "automatically" required, and the court may instead dismiss without prejudice).

### 4. Failure to state a claim based on *"improper tacking"*

The Trinity Michigan Defendants next contend that "improper tacking," as asserted in the Trinity Iowa Plaintiffs' Third Counterclaim, is not a recognized basis for cancellation of a trademark under 15 U.S.C. § 1064(3). They therefore contend that the Third Counterclaim fails to state a claim upon which relief can be granted. The Trinity Iowa Plaintiffs, however, contend that "improper tacking" is a species of "abandonment," a ground for cancellation expressly enumerated in § 1064, because attempting to "tack" a party's priority for use of a mark onto a period of use of a predecessor mark without the same "commercial impression" between the marks may constitute an "abandonment" of the original mark. The Trinity Iowa Plaintiffs contend, further, that they have adequately pleaded that the Trinity Michigan Defendants are engaged in "improper tacking," because their present marks and the mark registered as the '669 mark differ in overall commercial impression, resulting in abandonment of the '669 mark. In reply, the Trinity Michigan Defendants assert that, if "improper tacking" is an allegation of "abandonment," it is redundant of the First Counterclaim, which also

pleads "abandonment" of the '669 mark, and so should be stricken.

### a. "Redundancy" of the claim

■ As explained above, the Trinity Michigan Defendants' "redundancy" argument fails, even assuming that "improper tacking" is a species of "abandonment." The pleading of Counterclaims One ("abandonment") and Three ("improper tacking" as grounds for abandonment) as separate counts does not constitute a "technical" violation of Rule 10(b). Although the two counterclaims may have essentially the same "statutory" basis, § 1064(3), they appear to be based upon separate kinds of conduct allegedly resulting in "abandonment," and thus appear to be based upon "distinctive" theories and "separate transactions or occurrences." *Cf. Harris*, 2001 WL 1191188 at*1 ("Rule 10(b) requires pleading separate counts for each distinctive statutory and constitutional claim."); *Demes*, 2001 WL 563813 at *2 ("Rule 10(b) requires that ... each claim founded upon a separate transaction or occurrence be stated in separate counts. The rule has been interpreted to require separate counts for each distinctive statutory and constitutional claim.") (citations omitted). Therefore, Counterclaim Three will not be stricken on the ground that it is "redundant" of Counterclaim One, assuming that "improper tacking" is indeed a species of "abandonment."

### b. "Abandonment" and "tacking"

However, the conclusion just above begs the next question, which is, is "improper tacking" indeed a species of "abandonment"? That question requires consideration of what constitutes "abandonment" and "tacking" of marks, both "proper" and "improper," to determine whether or not "improper tacking" satisfies the requirements for an "abandonment."

■ *i. "Abandonment."* The circumstances under which a trademark is "abandoned" are defined by statute:

A mark shall be deemed to be "abandoned" if either of the following occurs:

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127. Although "[i]ntent not to resume may be inferred from the circumstances," *see id.*, " 'abandonment, being in the nature of a forfeiture, must be strictly proved.' " *Marshak v. Treadwell*, 240 F.3d 184, 198 (3d Cir.2001) (quoting *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139 (3d Cir.1981)). Thus, a party seeking to prove "abandonment" of a mark based on "discontinued use" must "strictly" prove the following: (1) that use of the mark had been discontinued in the United States; and (2) that the owner of the mark had the actual intent to abandon the mark. *See id.; Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir.) ("In order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, *i.e.*, that the other party actually abandoned its marks through non-use and that it intended to do so.") (citing cases), *cert.*

*denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 273 (2000); *but see Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1080 (5th Cir.) ("[U]nlike abandonment through non-use . . . , an intent to abandon the mark is expressly not required to prove abandonment under [the second subsection of the definition of abandonment in § 1127].*"), cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997).

As to key terms in the first definition of "abandonment," "[b]oth 'use' and 'intent to resume such use' have somewhat specialized meanings in the context of the Lanham Act." *Emergency One, Inc. v. American FireEagle, Ltd.,* 228 F.3d 531, 537 (4th Cir.2000).

"Use" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. *See also Exxon Corp. v. Humble Exploration Co.,* 695 F.2d 96, 99–102 (5th Cir.1983). Thus, neither promotional use of the mark on goods in a different course of trade nor mere token use constitute "use" under the Lanham Act. *See Imperial Tobacco, Ltd. v. Philip Morris, Inc.,* 899 F.2d 1575, 1582–83 (Fed.Cir.1990) (promotional use of mark in sales of whiskey, pens, watches, sunglasses, and food did not constitute use of mark for cigarettes); *Silverman,* 870 F.2d at 47–48 (sporadic licensing of mark for non-commercial purposes was not a use under the Lanham Act); *Humble Exploration,* 695 F.2d at 99–102 (token sales of small quantities of goods with "Humble" trademark to selected purchasers who knew that they were receiving Exxon merchandise were not "uses" under Lanham Act). In addition, for a mark to be "used" on goods it must be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable,

then on documents associated with the goods or their sale." 15 U.S.C. § 1127.

\* \* \* \* \* \*

It is true that the owner of a trademark cannot defeat an abandonment claim, as well as the purposes of the Lanham Act, by simply asserting a vague, subjective intent to resume use of a mark at some unspecified future date. *See Silverman,* 870 F.2d at 46–47. Once the challenger shows discontinued use, the owner must produce evidence of intent to resume use "within the reasonably foreseeable future." *Id.* at 46. *See also Roulo,* 886 F.2d at 938. Requiring the owner to have an intent to use the mark in the reasonably foreseeable future ensures that valuable trademarks are in fact used in commerce as the Lanham Act intends, rather than simply hoarded or warehoused. *See Roulo,* 886 F.2d at 938; *Silverman,* 870 F.2d at 46; *Humble Exploration,* 695 F.2d at 102–03.

Of course, what is meant by the "reasonably foreseeable future" will vary depending on the industry and the particular circumstances of the case. *Cf. Defiance Button Mach. Co. v. C & C Metal Prods. Corp.,* 759 F.2d 1053, 1060–61 (2d Cir.1985).

*Emergency One, Inc.,* 228 F.3d at 536–37.

Under the second definition of "abandonment," the one premised on "any course of conduct of the owner, including acts of omission as well as commission," *see* 15 U.S.C. § 1127, "intent to abandon the mark is expressly not required to prove abandonment." *Exxon Corp.,* 109 F.3d at 1080. The question is, instead, whether, (1) through conduct of the owner, (2) the mark has either (a) "become the generic name for the goods or services on or in connection with which it is used," or (b) has "otherwise . . . los[t] its significance as a mark." 15 U.S.C. § 1127.

"Loss of significance" of a mark, in turn, means "los[s of] its significance as an indicator of origin." *Exxon Corp.*, 109 F.3d at 1080; *Guiding Eyes for the Blind, Inc. v. Guide Dog Found. for the Blind, Inc.*, 55 C.C.P.A. 701, 384 F.2d 1016, 1019 (Cust. & Pat.App.1967) (to demonstrate abandonment on this basis, a petitioner must "establish that conduct of [the registrant] was such as to cause a loss in significance of its mark as an indicator of origin").

As to the effect of abandonment, in addition to the possibility of cancellation under 15 U.S.C. § 1064,

> Once a registered trademark has been abandoned, any subsequent user of the mark must measure its rights from the time the subsequent use begins, and cannot rely upon any residual secondary meaning in the mark from the original period of use. This is true even if it is the original mark holder that resumes use of the abandoned trademark. *See Restatement (Third), supra,* § 30 cmt. a; *Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd.,* 817 F.Supp. 1103, 1131–33 (S.D.N.Y.1993), *vacated pursuant to settlement,* 859 F.Supp. 80 (S.D.N.Y.1994).

*L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.,* 79 F.3d 258, 263–64 (2d Cir.1996).

**ii. "Tacking" and "improper tacking."** In *Brookfield Communications, Inc. v. West Coast Entertainment, Corp.,* 174 F.3d 1036 (9th Cir.1999), the Ninth Circuit Court of Appeals explained "tacking" as follows:

> [O]ur sister circuits have explicitly recognized the ability of a trademark owner to claim priority in a mark based on the first use date of a similar, but technically distinct, mark—but only in the exceptionally narrow instance where "the previously used mark is 'the legal equivalent of the mark in question or indistinguishable therefrom' such that

consumers 'consider both as the same mark.' " *Data Concepts, Inc. v. Digital Consulting, Inc.,* 150 F.3d 620, 623 (6th Cir.1998) (quoting *Van Dyne–Crotty, Inc. v. Wear–Guard Corp.,* 926 F.2d 1156, 1159 (Fed.Cir.1991))[.] *This constructive use theory is known as "tacking," as the trademark holder essentially seeks to "tack" his first use date in the earlier mark onto the subsequent mark. See generally* 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 17:25–27 (4th ed.1998) [hereafter "McCarthy"].

\* \* \* \* \* \*

The standard for "tacking," however, is exceedingly strict: "The marks must create the *same, continuing commercial impression,* and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." *Van Dyne–Crotty,* 926 F.2d at 1159 (emphasis added) (citations and quotation marks omitted). In other words, "the previously used mark must be the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark." *Id.* (emphasis added); *see also Data Concepts,* 150 F.3d at 623 (adopting the *Van Dyne–Crotty* test). This standard is considerably higher than the standard for "likelihood of confusion," which [applies to infringement].

*Brookfield Communications, Inc.,* 174 F.3d at 1047–48. It follows that "improper tacking" is an attempt to "tack" marks that are not "legal equivalents" conveying the "same commercial impression," and the party engaged in "improper tacking" cannot claim priority from the period of use of the predecessor mark. *Cf. id.; see also Van Dyne–Crotty,* 926 F.2d at 1159–60.

The *Brookfield Communications* case involved an owner of a predecessor mark attempting to "tack" the priority from that mark, "The Movie Buff's Movie Store," onto its use of a subsequent mark it also owned, "moviebuff.com." *See id.* at 1047. The treatise on which both the Ninth Circuit Court of Appeals in *Brookfield Communications* and the Trinity Iowa Plaintiffs in this case rely, J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4th ed. 1998) ("MCCARTHY"), discusses "tacking" primarily in similar circumstances. *See* MCCARTHY at §§ 17:25–28. However, one of the principal decisions on "tacking," *Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156 (Fed.Cir.1991), like the present case, involved a party attempting to "tack" the priority of a predecessor mark it had just acquired by assignment—indeed, had acquired in the course of litigation over priority of trademarks, as is the case here—onto its own common-law mark. *See Van Dyne–Crotty*, 926 F.2d at 1158 ("Following Wear–Guard's cancellation petition, in September 1988, [Van Dyne–Crotty] acquired the mark 'CLOTHES THAT WORK. FOR THE WORK YOU DO' from Horace Small Manufacturing Company" and "[Van Dyne–Crotty] amended its pleadings before the Board to reflect its acquisition of the Horace Small mark and further alleged, on the assumption that the registered and the Horace Small marks were legal equivalents, that by 'tacking' on Horace Small's use since the mid–1970s of its 'CLOTHES THAT WORK. FOR THE WORK YOU DO' mark to the 'CLOTHES THAT WORK' mark, the [Van Dyne–Crotty] mark was in use prior to any of the Wear–Guard marks."). Although the Federal Circuit Court of Appeals held that the marks at issue in *Van Dyne–Crotty* could not be "tacked," it was not on the basis that the two marks were originally owned by different entities. Rather, it was because "the

two marks were not legal equivalents because the purchasers 'would clearly differentiate them.'" *Id.* at 1160 (upholding the Board's conclusion in this respect). Thus, *Van Dyne–Crotty* does not discount the possibility of "tacking" where the owner attempts to "tack" the priority from a predecessor mark it has just acquired—even in the course of litigation over priority of marks—onto its own, subsequent mark.

Here, as in *Van Dyne–Crotty*, the Trinity Iowa Plaintiffs allege that the priority of the '669 mark cannot be "tacked" onto the Trinity Michigan Defendants' subsequent use of "Trinity" or "Trinity Health," because the marks are not "legal equivalents." However, the question at this point in the proceedings is not whether the Trinity Iowa Plaintiffs can demonstrate "improper tacking," but whether or not "improper tacking" constitutes "abandonment" of the predecessor mark, in this case, the '669 mark. The decision in *Van Dyne–Crotty* makes no such determination. Thus, the court must compare the meaning and effect of "tacking" with what constitutes "abandonment," as explained above.

***iii. "Improper tacking" as "abandonment."*** The *effect* of "abandonment" is essentially the same as the *effect* of "improper tacking": In either case, the owner of the senior mark can no longer claim priority from the date of use of the senior mark. *Compare L. & J.G. Stickley, Inc.*, 79 F.3d at 263–64 ("Once a registered trademark has been abandoned, any subsequent user of the mark must measure its rights from the time the subsequent use begins, and cannot rely upon any residual secondary meaning in the mark from the original period of use."), *with Brookfield Communications, Inc.*, 174 F.3d at 1047–48 (under the "tacking" rule, a party can only claim priority from the period of use of the predecessor mark, if the predecessor and

subsequent marks are "legal equivalents" in that they convey the same commercial impression). However, that does not mean that "improper tacking" is necessarily a *cause* of "abandonment."

As the legal basis for their claim that "improper tacking" constitutes "abandonment," the Trinity Iowa Plaintiffs rely on McCarthy at § 17:26, p. 17–45. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Counterclaims at 11 ("Attempting to tack on to a mark without maintaining the same commercial impression can result in abandonment of the original mark. McCarthy, *supra,* at § 17:26, p. 17–45."). The plaintiffs apparently rely on the following statement in McCarthy:

> *In general, neither abandonment nor loss of the ability to tack-on to achieve priority will occur if the new form of the mark creates the same commercial impression as did the old form.* That is, the change in form of a mark does not constitute abandonment or a break in continuous use if the change neither creates a new mark nor changes the commercial impression created by the old mark. *On the other hand, a change of format which alters the overall commercial impression of a mark results in a case where the mark owner cannot claim priority of use dating from first use of the old form of the mark.*

The test is one of continuity. A mark can be modified or changed without abandonment or loss of priority if done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression. Trademark rights inure in the basic commercial impression created by a mark, not in any particular format or style. The Court of Customs and Patent Appeals (C.C.P.A.) has stated that, "The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form,

without abandonment, if the new and old forms create the same, continuing commercial impression."

McCarthy at § 17:26 (footnotes omitted). While this passage of McCarthy clearly stands for the "obverse" proposition—that *proper* tacking does not constitute an abandonment of the predecessor mark—it does not plainly stand for the proposition that *improper* tacking necessarily constitutes an "abandonment" of the predecessor mark.

▮ Nevertheless, the assumption of a party claiming that marks can be "tacked" is that the subsequent mark takes the place of, and invokes the priority of, the predecessor mark, thus maintaining the continuity of priority and trademark rights from the predecessor mark to the subsequent mark. *See Brookfield Communications, Inc.,* 174 F.3d at 1047–48; *Van Dyne–Crotty,* 926 F.2d at 1158–60. It could, but may not *necessarily,* follow that the party attempting to "tack" will not only discontinue use of the predecessor mark in the United States, but will have the actual intent not to resume use of the predecessor mark, *see* 15 U.S.C. § 1127 (first definition of "abandonment" is non-use with intent not to resume use); *see also Marshak,* 240 F.3d at 198 (identifying these elements of "abandonment"); *Kellogg Co.,* 209 F.3d at 575 (same), but, if the "tacking" is improper, the party will lose the priority that might otherwise have been preserved, *see Brookfield Communications, Inc.,* 174 F.3d at 1047–48; *Van Dyne–Crotty,* 926 F.2d at 1158–60, resulting in "abandonment" of the predecessor mark. Similarly, it is possible that the party attempting to "tack," but failing to do so, because the marks do not "convey the same commercial impression," *see id.; Van Dyne–Crotty,* 926 F.2d at 1158–60, will have engaged in conduct that results in "loss of significance" of the predecessor

mark, *see* 15 U.S.C. § 1127 (second definition of "abandonment"), because the predecessor mark no longer is significant as an indication of origin. *See Exxon Corp.,* 109 F.3d at 1080; *Guiding Eyes for the Blind, Inc.,* 384 F.2d at 1019. In short, the court concludes that "improper tacking" can be, but is not necessarily, a species of "abandonment" that could result in cancellation of a mark pursuant to 15 U.S.C. § 1064, *if* the "improper tacking" also is shown to satisfy the elements of "abandonment" under 15 U.S.C. § 1127.

To put it another way, for purposes of the present motion to dismiss, the Trinity Iowa Plaintiffs "improper tacking" claim does state a claim upon which relief can be granted, because there is a " 'set of facts that could be proved consistent with the allegations' " of "improper tacking" that would constitute "abandonment." *See Handeen,* 112 F.3d at 1347 (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229). The Trinity Michigan Defendants' motion to dismiss the "improper tacking" counterclaim will be denied.

### 5. "Unclean hands"

#### a. Arguments of the parties

The Trinity Michigan Defendants next challenge the Trinity Iowa Plaintiffs' Fourth Counterclaim, which alleges "unclean hands" on the part of THC in its procurement of the federal registration of the '669 mark. The Trinity Michigan Defendants first contend that incorporation by reference of prior paragraphs of the Reply and Counterclaims into this cause of action makes it particularly difficult to determine the factual basis for the claim. They summarize their understanding of the basis for the Fourth Counterclaim to be that they allegedly "acted in collusion with the assignor" of the registration; that some or all of them are misinforming the public that their marks are covered by the registration; that all of them are claiming

greater rights than are conveyed by the registered mark; that they are claiming superior rights in the geographic areas now claimed by the Trinity Iowa Plaintiffs; and that THC acquired the registration for the '669 mark after notice from the Trinity Iowa Plaintiffs of alleged infringement and in purported contradiction of representations in THC's letter of February 25, 2000. The Trinity Michigan Defendants, however, contend that these contentions are wrong as a matter of fact and law. First, the Trinity Michigan Defendants contend that they have never alleged that the "Trinity" and "Trinity Health" marks are covered by the '669 registration. Second, they contend that they did not, and did not have to, allege that the predecessor owner of the '669 mark used the mark in Iowa or Illinois, because the registration provides nationwide protection except in areas where there is a prior user with established trademark rights. Third, they contend that there are no "unclean hands" in alleging that the plaintiffs' word marks may infringe the word-plus-design mark registered as the '669 mark, because such allegations are supported by the law, where the touchstone is "likelihood of confusion," not "identity." Finally, they contend that there are no "unclean hands" in attempting to acquire superior rights over an opponent in the course of litigation by acquiring the assignment of a mark held by a third party, and that nothing in the February 25, 2000, letter promises not to pursue such a course.

In response, the Trinity Iowa Plaintiffs argue that the Trinity Michigan Defendants "transgressed equitable standards of conduct" and "violated public policy," to an extent sufficient to constitute "unclean hands," by secretly seeking out and acquiring the '669 mark in contradiction of assurances stated in the February 25, 2000, letter, then asserting infringement by the plaintiffs on the basis of the newly-ac-

quired registration. They also contend that they have stated a claim for "unclean hands" on the basis of the Trinity Michigan Defendants' reliance on the '669 mark as establishing their rights in the terms "Trinity" and/or "Trinity Health" or similar words alone, when the '669 mark is a word-plus-design mark, because the defendants are claiming rights in more than the '669 mark would cover, thus misusing the registration and misinforming the public that their marks are covered by the '669 registration. The Trinity Iowa Plaintiffs contend that they have adequately alleged impermissible conduct and that such conduct has the required immediate and necessary relation to the equitable basis of the infringement litigation at issue. Finally, the Trinity Iowa Plaintiffs argue that whether or not a party has "unclean hands" is primarily a fact issue not amenable to resolution on a motion to dismiss.

In reply, the Trinity Michigan Defendants contend that the Trinity Iowa Plaintiffs have clarified that their "unclean hands" claim is premised on THC's acquisition and assertion of trademark rights under the '669 registration. They argue, however, that actions to enforce trademark rights, without more, cannot constitute "unclean hands," nor can any defensive action THC may have taken to acquire rights in the '669 mark. The Trinity Michigan Defendants contend further than no claim of groundless or frivolous assertion of their trademark rights can be made in this case.

#### b. The "unclean hands" cause of action

■ "Unclean hands" is recognized as a *defense* to a Lanham Act infringement suit. *See Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1313 (9th Cir.1997); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 846 (9th Cir.1987) ("Unclean hands is a defense to a Lanham Act infringement suit."); *see also Original*

*Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 281 (7th Cir.1992) (noting that a preliminary injunction should have been denied, because the parties seeking the injunction had infringed the enjoined party's trademarks in violation of the Lanham Act, and explaining that "[u]nclean hands is a traditional defense to an action for equitable relief. The purpose is to discourage unlawful activity, and is as relevant to preliminary as final relief."). However, because "unclean hands" is an equitable doctrine, *see id.,* the court will assume, without deciding, that "unclean hands" can be asserted as a counterclaim on which the claimant may obtain equitable relief, such as injunctive or declaratory relief. *Cf. id.* (suggesting that proof that the plaintiff acted with "unclean hands" would support a "claim for equitable relief" by the defendant); *SunAmerica Corp. v. Sun Life Assur. of Canada,* 77 F.3d 1325, 1336 n. 4 (11th Cir.) (noting that the "unclean hands" of a party should be considered in fashioning equitable relief in a trademark infringement action), *cert. denied,* 519 U.S. 822, 117 S.Ct. 79, 136 L.Ed.2d 37 (1996).

" '[E]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue.'* " *Levi Strauss,* 121 F.3d at 1313 (quoting *Fuddruckers, Inc.,* 826 F.2d at 847, with emphasis added in *Levi Strauss* ). Thus, " '[i]n its claim for equitable relief [based on unclean hands], the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.' " *Id.* (quoting *Fuddruckers,* 826 F.2d at 847). A somewhat more detailed discussion of "unclean hands" in reference to trademark litigation is found in *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373 (6th Cir. 1995):

"The concept of unclean hands may be employed by a court to deny injunctive relief [*i.e.*, used as a defense] where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Novus Franchising, Inc. v. Taylor*, 795 F.Supp. 122, 126 (M.D.Pa. 1992). The doctrine of unclean hands requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint. *Dollar Systems, Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.1989). "Thus, the doctrine is to be applied 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" *[Northeast Women's Center, Inc. v.] McMonagle*, 868 F.2d [1342,] 1354 [ (3d Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989) ] (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245–46, 54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933)). "[T]he unclean hands doctrine can be applied only to conduct relating to the matter in litigation." *Id.* at 1355. Finally, "the doctrine is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *American Hosp. Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986).

*Performance Unlimited*, 52 F.3d at 1383; *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n. 7 (3d Cir.1992) ("To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff.").

In *Performance Unlimited*, the appellate court concluded that the district court had erroneously found "unclean hands" in a dispute over copyright and trademark licensing "upon nothing more than the 'possibility' that the arbitrator could determine that Performance had breached its license agreement with Questar, or that Performance had breached its license agreement with Leininger, or that Performance had breached both license agreements. This is not the required finding that Performance's actions rose to the level of fraud, deceit, unconscionability, or bad faith." *Id.* at 1384. Nor was there an adequate showing of "unclean hands" on the part of one party in failing to pay over royalties due two other parties where the party that had failed to make the royalty payment had not, in turn, been paid by another party. *Id.*

As an example of "unclean hands," the Ninth Circuit Court of Appeals recently explained that "a court should not protect a trademark which itself is misleading." *Levi Strauss*, 121 F.3d at 1313 (citing *Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 533–34, 23 S.Ct. 161, 47 L.Ed. 282 (1903), as holding that a laxative named "Syrup of Figs" was unprotectable where the product contained no figs or fig juice). However, in the *Levi Strauss* case itself, the Ninth Circuit Court of Appeals found that the district court did not err in rejecting an "unclean hands" claim for equitable estoppel of a trademark infringement action, where the alleged "entrapment" of the alleged infringer was not shown to be inequitable in the face of evidence of the alleged infringer's predisposition to sell or produce counterfeit clothing. *id.*

By way of contrast, an example of what might constitute "unclean hands" in trademark litigation was described by the Eleventh Circuit Court of Appeals as follows:

As an additional factor in fashioning equitable relief while avoiding unnecessary

hardship to the junior user, the district court should consider the history leading to the inevitable confusion that revives the senior user's claims. Specifically, it should consider whether the senior user comes to the court with "unclean hands" wrongfully seeking to appropriate the goodwill of the junior user's mark. The district court should not enter injunctive relief that rewards a senior user that has intentionally created inevitable confusion in order to revive its claim from estoppel, after acquiescing in a competitor's use of a mark while that competitor establishes goodwill in the mark. SunAmerica argues that this case presents us with just such a scenario, but the district court found as a fact that Sun Life of Canada did not cause the present confusion. Should this hypothetical materialize in a future case, we are confident that district courts will be able to fashion injunctive relief that avoids the unjust enrichment of a predatory senior user.

*SunAmerica Corp.,* 77 F.3d at 1336 n. 4.

### c. Sufficiency of the allegations of "unclean hands"

The court reads the Trinity Iowa Plaintiffs' Fourth Counterclaim and the portion of their brief opposing the motion to dismiss this claim, as do the defendants, as clarifying that the "unclean hands" claim is based on (1) acquiring the '669 mark and asserting infringement of that mark by the Trinity Iowa Plaintiffs in contradiction of assurances made in the February 25, 2000, letter, and (2) claiming rights in more than the '669 mark would cover, thus misusing the registration and misinforming the public that the '669 registration covers the Trinity Michigan Defendants' marks. The court will assess the sufficiency of these allegations to state a claim of "unclean hands" upon which relief can be granted.

### ██ i. Conduct contrary to assurances. Certainly, nothing about allega-

tions that the Trinity Michigan Defendants acquired the '669 mark and asserted infringement of that mark by the Trinity Iowa Plaintiffs, even in the course of litigation between the parties over their common-law marks, standing alone, states a claim of "unclean hands." Such allegations would not identify any conduct that was fraudulent, deceitful, unconscionable, or in bad faith, even though the conduct alleged plainly relates to the controversy in issue. *See Levi Strauss,* 121 F.3d at 1313; *Performance Unlimited,* 52 F.3d at 1383; *S & R Corp.,* 968 F.2d at 377 n. 7; *Fuddruckers, Inc.,* 826 F.2d at 847. As the Trinity Michigan Defendants contend, such conduct has been countenanced by the courts. In *The Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666 (7th Cir.1982), the Seventh Circuit Court of Appeals considered an argument that "the assignment [of a mark] [wa]s ineffective because it was a sham transaction, initiated by Harris for the sole purpose of obtaining superior rights to the mark in the Chicago area," even though the assignee was presumably aware of the plaintiffs' prior rights in the mark. *The Money Store,* 689 F.2d at 678. The court rejected the argument:

Harris did in fact know of the plaintiff's pending registration and it would be naive to conclude that that knowledge was completely irrelevant to its decision to seek an assignment from United. It is also true, however, that so long as United retained any rights in the mark, that institution was itself an impediment to the defendant's usage of the mark. Obtaining the assignment from United is consistent with the defendant's documented belief that the plaintiff could not successfully assert nationwide rights in the mark, and therefore another institution was free to use the mark in the Chicago area. We do not believe that an assignment motivated at least in part

by sound business judgment should be set aside as a sham transaction. *The Money Store,* 689 F.2d at 678; *see also Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1348 n. 10 (E.D.N.Y.1994) ("Defendants attempt to discount the import of this sale [of a mark by the defendant to the plaintiff] by criticizing plaintiff's 'nefarious' motivation for the sale, namely to gain evidence of senior use in a prior lawsuit, *Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675 (2d Cir.1989). Amend. Ans. ¶ 97. However, the motivation for a sale is irrelevant and senior user status may be properly achieved by assignment in anticipation or in the midst of litigation. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 678 (7th Cir.1982).").

The question, however, is whether allegations that the Trinity Michigan Defendants purchased the '669 mark during the course of this litigation and asserted a claim of infringement of the '669 mark *in contradiction of specific assurances in the February 25, 2000, letter* state a claim of "unclean hands," because they adequately allege the requisite deceit or bad faith. Although the Trinity Iowa Plaintiffs did not attach the February 25, 2000, letter to their pleadings, the Trinity Michigan Defendants have submitted it as an exhibit with their brief in support of their motion to dismiss. The Trinity Michigan Defendants argue that the court can consider the letter, even though it is evidence "outside of the pleadings," because it is the document upon which the Trinity Iowa Plaintiffs' "unclean hands" claim is based.

▇ On a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the docu-

ments." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir.1999) (citing *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997)). Here, the Trinity Iowa Plaintiffs' "unclean hands" claim, at least as to the theory that the Trinity Michigan Defendants acted contrary to assurances made in the course of this litigation, is based on interpretation of the February 25, 2000, letter, and it does not appear that the parties dispute the actual contents of that letter. However, this theory of "unclean hands" is not based *solely* on the interpretation of the letter; rather, the question is whether certain subsequent conduct alleged in the counterclaim violates assurances made in the letter, as interpreted. The court concludes that, to embark on an analysis and interpretation of the letter and whether the Trinity Michigan Defendants' acquisition and assertion of rights in the '669 mark violates assurances in the letter would involve the court in significant fact-finding that is not the proper function of the court on a motion to dismiss pursuant to Rule 12(b)(6). For present purposes, it suffices for the court to conclude that there is a " 'set of facts that could be proved consistent with the allegations' " that the Trinity Michigan Defendants acted contrary to assurances in the February 25, 2000, letter that would be sufficient to establish "deceit" or "bad faith," and the Fourth Counterclaim therefore states a claim of "unclean hands." *See Handeen,* 112 F.3d at 1347 (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229).

*ii. Wrongful assertion of trademark rights.* The Trinity Iowa Plaintiffs also assert, as a second theory for their "unclean hands" claim, that the Trinity Michigan Defendants are claiming rights in more than the '669 mark would cover, thus misusing the registration and misinforming the public that the '669 registration covers the Trinity Michigan Defendants' marks. The Trinity Michigan Defendants,

however, contend that, following acquisition of the '669 registration, they have properly asserted that their trademark rights are nationwide, except where the Trinity Iowa Plaintiffs can establish prior use; that they have properly asserted that the Trinity Iowa Plaintiffs' word mark can infringe the word-plus-design mark embodied in the '669 registration; and that they have never asserted that their own marks are covered by the '669 mark, as the Trinity Iowa Plaintiffs allege.[5] In essence, the Trinity Michigan Defendants contend that it cannot be "unclean hands" for them to assert or attempt to protect the trademark rights they have acquired.

It is clear that frivolous or groundless assertion of trademark rights may subject the party asserting those rights to sanctions, including an award of attorney fees pursuant to the Lanham Act, or sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure or Rule 38 of the Federal Rules of Appellate Procedure. *See, e.g., S Indus., Inc. v. Centra 2000, Inc.,* 249 F.3d 625, 627–28 & n. 1 (7th Cir.2001) ("The Lanham Act provides that the court 'in exceptional cases may award reasonable attorney fees to the prevailing party.' 15 U.S.C. § 1117(a). Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive. *Door Sys., Inc. [v. Pro–Line Door Sys., Inc.],* 126 F.3d 1028, 1031 [ (7th Cir.1997) ]. A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit. *Id.* Under the Lanham Act, an award of attorneys fees is committed to the trial court's sound discre-

tion. *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1099 (7th Cir. 1994)."); *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 438 (7th Cir.1989) (contemplating an attorney fee award under the Lanham Act, and sanctions pursuant to Rule 38 of the Federal Rules of Appellate Procedure instead of remanding to allow the district court to impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure). Similarly, the court concludes that assertion of trademark rights could be so groundless or frivolous as to amount to conduct that was fraudulent, deceitful, unconscionable, or in bad faith, and plainly related to the controversy in issue. *See Levi Strauss,* 121 F.3d at 1313; *Performance Unlimited,* 52 F.3d at 1383; *S & R Corp.,* 968 F.2d at 377 n. 7; *Fuddruckers, Inc.,* 826 F.2d at 847. Thus, there is a " 'set of facts that could be proved consistent with the allegations' " that the Trinity Michigan Defendants are abusing purported trademark rights to such a degree as to constitute "unclean hands." *See Handeen,* 112 F.3d at 1347 (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229).

Therefore, the Trinity Michigan Defendants are not entitled to dismissal of the Trinity Iowa Plaintiffs' Fourth Counterclaim for "unclean hands."

### 6. Unfair competition

#### a. Arguments of the parties

The Trinity Michigan Defendants also assert that the Trinity Iowa Plaintiffs' Fifth Counterclaim, asserting unfair competition in violation of the Lanham Act and state common law, fails to state a claim (or claims) upon which relief can be granted.[6]

---

5. This contention would obviously be contrary to any attempt to "tack" the priority of the predecessor '669 mark onto the Trinity Michigan Defendants' latter common-law marks.

6. As mentioned above, *see supra* p. 909, in the event this claim survives the motion to dismiss, it should be repleaded to allege unfair competition in violation of the Lanham Act and Iowa common law in separate counts, as

The Trinity Michigan Defendants contend that this claim boils down to a claim that the Trinity Michigan Defendants' "misuse" of the '669 mark by attempting to enforce it in their counterclaim constitutes unfair competition. They contend that such a claim is "ridiculous," again citing *Informix Software, Inc. v. Oracle Corp.*, 927 F.Supp. 1283 (N.D.Cal.1996).

The Trinity Iowa Plaintiffs, however, contend that a trademark infringement action brought for oppressive purposes may give rise to a suit for unfair competition under the Lanham Act or the common law. They argue that the premise of the claim here is that the Trinity Michigan Defendants have made a bad faith assertion of trademark rights, knowing they have no superior rights in the Trinity Iowa Plaintiffs' trade area. Thus, they contend that the claim is not premised merely on an attempt to assert trademark rights, but on the knowing assertion of groundless and oppressive claims of infringement.

#### b. Unfair competition under the Lanham Act and state law

As the Eighth Circuit Court of Appeals recently observed,

> Section 43(a) [of the Lanham Act] is broadly worded, providing in relevant part:
>
> (1) Any person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading representation of fact, which
>
> (A) is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her ... commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geograph-

ic origin of his or her or another person's ... commercial activities,

> shall be liable [to] ... any person ... likely to be damaged by such act. 15 U.S.C. § 1125(a). The statute has been broadly construed by the federal courts as "making certain types of unfair competition federal statutory torts." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 863, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (quotation omitted); *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776–84, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring). In amending the Lanham Act, Congress has expressed its satisfaction with this judicial approach to construing § 43(a). See SEN. REP. NO. 100–515, at 40–41 (1988), reprinted in 1988 U.S.C.C.A.N. 5577, 5603–04.

*Home Builders Ass'n v. L & L Exhibition Management, Inc.*, 226 F.3d 944, 947 (8th Cir.2000). Thus, Lanham Act "unfair competition" claims may be based on conduct far broader than the bare language of the statute might suggest.

The "doctrine of unfair competition" under Iowa law is at least as broad, as shown by the Iowa Supreme Court's explanation of the doctrine in *Basic Chem., Inc. v. Benson*, 251 N.W.2d 220 (Iowa 1977):

> The doctrine of unfair competition is based on the principle of common business integrity. It goes to the question of a defendant's methods and representations in marketing his products, not to his right to manufacture or produce them. *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5 Cir.1971).

In *Johnson Gas Co. v. Reliable Gas Co.*, 233 Iowa 641, 646–647, 10 N.W.2d 23, 27, this court stated:

required by Rule 10(b) of the Federal Rules of Civil Procedure.

There are many cases involving unfair competition decided by the state and federal courts. Many of them are collected in the Annotation in 84 A.L.R. 472 to 490. * * * (T)he writer of the A.L.R. annotation, above cited, states the general rule, at page 484, that:

'The essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as the goods of another, and while this involves an intent to deceive, it is not necessary to prove intent by direct evidence, where it is clearly to be inferred from circumstances.'

The previous decisions of this court follow the above general rule. We said in the case of *Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co.,* 167 Iowa 202, 207, 149 N.W. 184, 186, that unfair competition:

" ' * * * consists in the conduct of a trade or business in such a manner that there is an expressed or implied representation that the goods or business of the one man are the goods and business of another. * * * The ground of the action of unfair competition is fraud, and this may be shown by direct testimony, or by facts and circumstances or inferred from the manner in which the business is carried on.' " *See also B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d at 1262; *Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474, 478 (5 Cir.1974); *F.W. Fitch Co. v. Camille, Inc.,* 106 F.2d 635, 639 (8 Cir. 1939).

Contrary to defendants' contention, a demonstration of actual confusion in the minds of the consumers is not a prerequisite for plaintiff's successful assertion of an unfair competition claim. All that is required is a showing of a likelihood or probability of confusion as a natural consequence of the activities. *Surgical Supply Service, Inc. v. Adler,* 321 F.2d 536, 539 (3 Cir.1963); *Professional Golf-*ers *Ass'n v. Bankers L. & C. Co.,* 514 F.2d 665, 671 (5 Cir.1975); *Alberto–Culver Company v. Andrea Dumon, Inc.,* 466 F.2d 705, 708–709 (7 Cir.1972).

The question is whether the natural consequence of defendants' activities would create probable confusion in the minds of customers in the [pertinent] industry as to the products in question. *Basic Chem., Inc.,* 251 N.W.2d at 231–32.

██ However, the Trinity Michigan Defendants are correct that there are some limits on an "unfair competition" claim under the Lanham Act. In *Informix Software,* the decision on which the Trinity Michigan Defendants rely, the court found that the plaintiffs' assertion of an "unfair competition" claim on the basis of the defendant's assertion of its rights as the exclusive licensee of the challenged mark was "ridiculous." *Informix Software,* 927 F.Supp. at 1287. The court explained, as follows:

A federally registered trademark is presumed to be valid and enforceable. 15 U.S.C. § 1057(b). If the actions Oracle is alleged to have taken were actionable, no owner of a registered trademark could publicly state that it has an enforceable trademark, or attempt to enforce its rights in that trademark. Asserting rights enforceable by statute is not actionable as unfair competition.

*Informix Software,* 927 F.Supp. at 1287. Thus, *Informix Software* does stand for the proposition that mere assertion of trademark rights cannot be actionable as "unfair competition."

Nevertheless, more is alleged here than mere assertion of trademark rights by the Trinity Michigan Defendants. Instead, the Trinity Iowa Plaintiffs' Fifth Counterclaim alleges that the Trinity Michigan Defendants have asserted that the '669 mark gives them superior rights in the "Trinity" and "Trinity Health" marks at

issue here without a legitimate basis for such contentions. *See* Counterclaim V, ¶ 75. The unfair competition counterclaim also alleges that the Trinity Michigan Defendants' unfounded assertion of superior trademark rights here is to deter and obstruct the Trinity Iowa Plaintiffs' legitimate business. *Id.* at ¶ 76.

For their part, the Trinity Iowa Plaintiffs point to the decision in *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.,* 964 F.Supp. 90 (W.D.N.Y.1997), as support for their contention that "unfair competition" under the Lanham Act or the common law is sufficiently broad to encompass a claim based on the conduct that they allege here. In *Laser Diode Array,* the court considered, on a motion to dismiss pursuant to Rule 12(b)(6), the sufficiency of an "unfair competition" claim under New York law that was based on allegations that, on information and belief, " 'in late 1995 or early 1996, LDAI contacted at least one diode bar supplier to induce the supplier to discontinue sales of the diode bars to Paradigm,' and that Paradigm has been damaged by LDAI's conduct." *Laser Diode Array,* 964 F.Supp. at 94 (quoting the answer and counterclaim). In response to the motion to dismiss the counterclaim, the claimant moved to amend the counterclaim to assert unfair competition under both New York law and § 43(a) of the Lanham Act. *Id.* The court found that "[t]he common-law tort of unfair competition is similar to an unfair-competition claim under the Lanham Act," *id.* at 95, although the court noted that a difference was that the Lanham Act claim required an allegation that the claimant is involved in interstate business and that the defendant's actions affected its business. *Id.* at 96. The court noted that the Second Circuit Court of Appeals, like the Eighth, as mentioned above, has recognized that § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), " 'is intended to be broadly construed,' " *id.* (quoting *National Ass'n of Pharmaceuti-*

*cal Mfrs. v. Ayerst Lab.,* 850 F.2d 904, 914 (2d Cir.1988)), so that § 43(a) " 'has been employed successfully to combat a wide variety of deceptive commercial practices.' " *Id.* (quoting *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266 (2d Cir. 1987)). The court found the alleged misconduct sufficient to state an "unfair competition" claim under both the Lanham Act and state common law:

> I find that as amended, the second counterclaim adequately alleges the elements of a claim for unfair competition under both the Lanham Act and the common law. There is case authority that allegations that a party falsely represented to a business's customers that the business was infringing on the party's patent rights will support such claims. *See, e.g., Laitram Machinery, Inc. v. Carnitech A/S,* 901 F.Supp. 1155, 1162 (E.D.La.1995) (issues of fact concerning plaintiff's allegation that defendant made false representations to plaintiff's customers that plaintiff had infringed defendant's patent rights precluded summary judgment for defendant on plaintiff's Lanham Act claim); *Larami Corp. v. Amron,* 36 U.S.P.Q.2d 1073, 1084 (E.D.Pa.1995) (evidence at trial showing that defendant sent letters to plaintiff's customers threatening legal action for patent and trademark infringement against anyone buying or selling plaintiff's products, and that defendant's claims of patent and trademark rights were false, supported jury's verdict for plaintiff on Lanham Act claim); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,* 827 F.Supp. 957, 964–65 (S.D.N.Y.1993) (granting summary judgment for defendant on plaintiff's unfair-competition claim based on allegation that defendant made false representations to plaintiff's customers that plaintiff was infringing defendant's patent, but recognizing that claim would be

viable if plaintiff adduced facts to support it); *Repap Enterprises Inc. v. Kamyr Inc.*, 27 U.S.P.Q.2d 1685, 1690 (E.D.Pa.1993) (defendant's false claim to patent rights in plaintiff's trade secrets violated Lanham Act); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 170 (C.D.Ill.1992) (denying motion to dismiss Lanham Act claim based on allegation that defendant sent false patent infringement letters to plaintiff and its customer).

*Laser Diode Array*, 964 F.Supp. at 95–96.

### c. *Sufficiency of the allegations to state a claim*

■ In light of the *Laser Diode Array* decision and the decisions cited therein, and the breadth of "unfair competition" under § 43(a) of the Lanham Act and Iowa common law, the court finds that the Trinity Iowa Plaintiffs have alleged sufficiently wrongful conduct to state an "unfair competition" claim under either the Lanham Act or state common law. Again, just as allegations of frivolous, groundless, or oppressive assertion of trademark rights could state a claim of "unclean hands," the court now holds that the allegations here are sufficient to state a claim of "unfair competition" under either the Lanham Act or Iowa common law, because they go beyond allegation merely of legitimate enforcement of trademark rights to conduct intended to create confusion about the proper scope of the trademark rights of the parties, with the purpose of damaging the Trinity Iowa Plaintiffs' business.

### 7. *Declaratory judgment*

The Trinity Michigan Defendants' challenge to the Trinity Iowa Plaintiffs' last Counterclaim to THC's Counterclaim is that the counterclaim for declaratory judgment is "derivative" of the prior counterclaims, and so must be dismissed where those counterclaims fail to state claims upon which relief can be granted. Be-

cause the court has found that all but one of the prior counterclaims do state claims upon which relief can be granted, the Trinity Michigan Defendants' challenge to this last counterclaim, even if it is merely "derivative" of the other claims, must be denied.

### III. CONCLUSION

Despite their assertions that all of the Trinity Iowa Plaintiffs' Counterclaims to THC's Counterclaim must be dismissed for technical pleading violations or failure to state a claim upon which relief can be granted, the court concludes that the Trinity Michigan Defendants' motion to dismiss can be granted only in part, and then only to the limited extent of requiring repleading of certain claims. The Trinity Michigan Defendants' motion to dismiss is **granted** as follows:

1. The Trinity Iowa Plaintiffs' (a) incorporation by reference of certain prior allegations, as explained herein, and (b) allegation in their Fifth Counterclaim of "unfair competition" claims pursuant to both the Lanham Act and the common law, also as explained herein, violate Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure. The Trinity Iowa Plaintiffs shall have **to and including January 18, 2002,** within which to amend their Counterclaims accordingly and the Trinity Michigan Defendants shall have **to and including February 1, 2002,** to frame a responsive pleading to the amended Counterclaims.

2. The Trinity Iowa Plaintiffs' Second Counterclaim, alleging fraudulent procurement of the '669 registration, fails to plead fraud with the particularity required by Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Trinity Iowa Plaintiffs shall have **to and including January 18, 2002,** within which to amend their pleading of fraud,

if they can, to satisfy the requirements of Rule 9(b) and 12(b)(6), and the Trinity Michigan Defendants shall have **to and including February 1, 2002,** to frame a responsive pleading to the amended fraudulent procurement Counterclaim.

The Trinity Michigan Defendants' motion to dismiss is otherwise denied, because as to each of the remaining claims, the court concludes that there is a set of facts that could be proved consistent with the allegations to sustain the claims under governing law.

**IT IS SO ORDERED.**